[No. 2042.   Aug. 29, 1917.]

STATE v. PEOPLE'S SAVINGS BANK & TRUST CO.

RYAN v. AMERICAN SURETY CO. OF NEW YORK

### SYLLABUS BY THE COUURT.

1.   Upon the appointment of a receiver of an insolvent banking corporation, having on deposit state funds, the state loses such priority as comes to it from the common law as a sovereign right, by reason of the divestiture of title which takes place upon the appointment of such receiver.
take place upon the appointment of such receiver.      P. 286

2.   Laws 1915, c. 67, providing for the organization of savings banks, etc., and by section 85, providing that the bank examiner, taking charge of any bank, shall ascertain its actual condition and make a return to the Attorney General, who, if satisfied that it cannot liquidate its indebtedness, shall institute proper proceedings to have a receiver appointed to wind up its affairs for the benefit of its depositors, creditors, and stockholders, such proceedings to be governed by the provisions of the general incorporation laws for the winding up of insolvent corporations, construed with Code 1915, § 959, divesting the bank's title to its property on the appointment of a receiver, vests title in a bank receiver, vests him with the powers of a receiver enumerated by section 957; as the word "proceedings" in section 85 include all of the steps

and all of the acts done by the court, and the receiver in the cause instituted by the Attorney General.          P. 287

Appeal from the District Court, Grant county; Neblett, Judge.

Proceedings by the State of New Mexico, filed by the Attorney General, to wind up the affairs of the People's Savings Bank & Trust Company, an insolvent corporation, with claim against the receiver by the American Surety Company of New York. From a judgment of the district court, dismissing exceptions of the surety company to the referee's decision and sustaining his decision, the surety company appeals. Affirmed.

Francis C. Wilson, of Santa Fe, for appellant.

State has common law right of preference, incident to sovereignty, in assets of bank in hands of receiver to extent of State's deposits therein. 1 Bl. Com. 240; 5 Enc. P. & P. 151; Browning v. Est. of Browning, 3 N. M. 659, 9 Pac. 677; State v. Armijo, 140 Pac. (N. M.) 1123; Gurule v. Duran, 149 Pac. (N. M.) 303; American Bonding Co. v. Reynolds, 203 Fed. 356; In re Carnegie Trust Co., 206 N. Y. 390, 99 N. E. 1096, 46 L. R. A. (N. S.) 260; Re Neiderstein, 154 App. Div. 138, 138 N. Y. Sup. 952; Booth v. Miller, 237 Pa. 297, 85 Atl. 457; U. S. Fid. & G. Co. v. Rainey, 120 Tenn. 357, 113 S. W. 397; Orem v. Wrightson, 51 Md. 34, 34 Am. Rep,. 286; State of Maryland v. Bank of Maryland, 6 G. & J. 205, 26 Am. Rep. 561; Seay v. Bank of Rome, 66 Ga. 615; Booth v. State, 141 Ga. 750, 63 S. E. 502; (wherein the court held tha ta statute giving such right of priority to the state was declaratory of the common law) ; Robinson v. Bank of Darien, 18 Ga. 65; State v. Foster, 5 Wyo. 199, 29 L. R. A. 226; Giles v. Grover, 9 Bing. 128.

Of the two or three states wherein the courts have held contrary to the above, New Jersey seems to have the leading case.

State v. People's S. B. & T. Co., 23 N. M., 282

Freeholders of Middlesex County vs. State Bank of Brunswick, 29 N. J. E. 268.

The appointment of a receiver did not divest banking corporation of title so as to defeat priority.

Sec. 86, C. 67, Laws 1915; Sec. 85 Id.

The sovereignty is not bound by provisions of insolvency act unless specifically mentioned therein.

Guarantee Title & T' Co. vs. Title Guaranty & S. Co., 224 U. S. 153, 56 L. Ed. 706; Dollar Sav. Bk. v. U. S. 19 Wall. 239, 22 L. Ed. 82; United States v. Herron, 20 Wall. 251, 260, 22 L. Ed. 275, 278; LeLwis v. United States, 92 U. S. 618, 23 L. Ed. 513; Commonwealth v. Baldwin, 1 Watts, 54, 26 Am. Dec. 33.

Wilson & Walton, of Silver City, for appellee.

Whether states in American Union have preference right to payment of their debts is in conflict.

Browning v. Est. of Browning, 3 N. M. 659; Freeholders of Middlesex County v. State Bank, 29 N. J. E. 268, 30 N. J. E. 311; State v. Harris, (S. C.) 2 Bail. L. 598; Potter v. Fidelity & D. Co. 101 Miss 823, 58 So. 713; and Commissioner of Banking v. Chelsea Savings Bank, 161 Mich. 691, 125 N. W. 524.

See also the notes to case ·State v. Foster (Wyo.) 29 L. R. A. 226, and In re Carnegie Trust Co. (N. Y.) 46 L. R. A. 260.

Even in those States where priority of the State is recognized it is uniformly held to be defeated by a general assignments for the benefit of creditors or any other divestiture of title, as in the case of the passing of title to a receiver.

36 Cyc. 871; State v. Williams, 101 Md. 529, 61 Atlantic 297; Freeholders of Middlesex Co. v. State Bank of Brunswick, supra.

Appellant's reply brief.

Under our statute the appointment of a receiver does not give greater powers than those conferred upon an ordinary chancery receiver.

American Bonding Co. v. Reynolds, 203 Fed. 358.

For additional authorities that the statute does not bind the state without express mention, see:

Swearingen v. U. S., 11 Gill. and J. 373; Commonwealth v. Baldwin, 1 Watts, 54; U. S. v. Hoar, 2 Mason, 314; Savings Bank v. U. S., 19 Wall. 239; State v. Kine, 41 N. H. 238; People v. Herkimer, 4 Cowen, 345; Mayrhofer v. Board of Education, 89 Cal. 110, 23 Am. St. R. 451; Board of Improvements v. School District, 56 Ark. 354, 35 Am. St. R. 108.

## OPINION OF THE COURT.

PARKER, J. The People's Savings Bank & Trust Company, of Silver City, N. M., closed its doors on June 26, 1915, having on deposit $9,929.08 of state funds. The deposit was secured by a depository bond in the sum of $30,000, with the American Surety Company as surety on the bond. Upon the closing of the bank the state of New Mexico made demand on the surety company for the payment of the amount of state funds on deposit in the bank at the time when it was closed, and the company paid the amount on July 27, 1915. Upon the payment of this amount, the state treasurer, in behalf of the state, receipted and assigned its demand against the People's Savings Bank & Trust Company to the surety company. Thereafter the attorney general filed a proceeding to wind up the affairs of the bank under the provisions of section 954 et seq., Code 1915, for the winding up of insolvent corporations, and the surety company filed with the receiver proof of claim, in which it is set up that the state had a common-law priority in the assets of the bank to the full extent of its deposits, and that by virtue of its payment of the sum representing these deposits the surety company became subrogated to that priority, and therefore entitled to

the payment of the claim before any other creditors whose claims were not secured by lien upon such assets. The question of priority raised by the surety company was decided adversely to the company by the referee. Upon exceptions filed by the surety company to the referee's report, the matter was brought before the district court, which overruled the exceptions and sustained the referee's decision, and thereupon this appeal was taken.

[1] The case may be disposed of quite summarily upon a single point. It is conceded that if the state had priority over other creditors of the insolvent corporation, then the surety company, under the facts existing in this case, would become subrogated to the rights of the state. The question, then, which is decisive of the case is whether the state, under the circumstances existing in this case, had a priority over other creditors of the insolvent corporation. We have recently had occasion to examine this question in the case of the State of New Mexico v. First State Bank of Las Cruces, 22 N. M. 661, 167 Pac. 3, not yet officially reported. In that case the state itself asserted the priority. After a thorough consideration of many cases the court concluded in that case that the right of priority of the state, even if it existed in this jurisdiction in all of its common-law force and effect the same as it formerly existed in the sovereign in Great Britain, was lost whenever the title to the property of an insolvent corporation was divested out of the corporation and invested in a receiver under the provisions of the statute. Counsel for appellant in this case has cited several cases not referred to in the opinion in the former case, all of which we have examined, but we find nothing in them to change our view of the question as heretofore announced. Counsel for appellant relies much upon the case of American Bonding Co. v. Reynolds, (D. C.) 203 Fed. 356. In that case the commonlaw right of priority was recognized to exist in Montana as a sovereign right of the state. It is held, however, in that case that the appointment of a receiver of an insolvent banking corporation under the laws of Montana does not so divest title as to cut off the right of priority of the state. In this particular the laws of

Montana differ from those of this jurisdiction. As we held in the former case and as is plainly pointed out in our statutes, the appointment of a receiver of an insolvent corporation divests the title of the corporation and vests the same in the receiver. Counsel also cites In re Carnegie Trust Co., 206 N. Y. 390, 99 N. E. 1096, 46 L. R. A. (N. S.) 260, and State v. Foster, 5 Wyo. 199, 38 Pac. 926, 29 L. R. A. 226, 6 3Am. St. Rep. 47, where valuable notes are appended to the cases. These two cases and the notes accompanying the same present no new features which have not been considered in our former opinion.

It follows that the judgment of the court below was correct and should be affirmed; and it is so ordered.

HANNA, C. J., and ROBERTS, J., concur.

### ON MOTION FOR REHEARING.

PARKER, J:

Counsel for appellant has moved the court for rehearing upon the ground that the court has overlooked controlling principles which were called to its attention in the brief and on argument.

It is to be observed that this case differs from the case of State v. First State Bank of Las Cruces, 22 N. M. 661, 167 Pac. 3, in that the bank, in this case, was organized under a later and different law, which will receive some further consideration. The Las Cruces bank was organized under the provisions of the act of April 3, 1884 (Laws 1884, c. 26) appearing as section 244 et seq. C. L. 1897. Such banks were brought under the provisions of the general incorporation laws (§§ 884-1020, Code 1915) by specific reference thereto in section 1014, Code 1915. Section 959, Code 1915, provides that title to its assets shall be divested out of the insolvent corporation upon the appointment of a receiver and vested in the receiver. We held in the Las Cruces Bank Case that the state lost its common-law preference by reason of this divestiture of title.

[2] Counsel for appellant, however, contends that a different consequence must be held to result in the case of a bank organized under chapter 67, Laws 1915, as the bank

in this case was, for the reason, it is argued, that the provisions of section 959, Code 1915, do not apply. The solution of the question suggested turns upon the proper interpretation of section 85, ch. 67, Laws 1915, which is as follows:

"Upon taking charge of any bank, the bank examiner shall as soon as possible, ascertain by a thorough examination of its affairs, its actual condition, and make a full and complete return thereof to the Attorney General, and if the Attorney General shall become satisfied that such bank cannot resume business or liquidate its indebtedness to the satisfaction of all of its creditors, he shall institute, forthwith, proper proceedings in the proper courts for the purpose of having a receiver appointed to take charge of such bank and to wind up the affairs and business thereof for the benefit of its depositors, creditors and stockholders. Such proceedings shall be governed by the provisions of the general incorporation laws for the winding up of insolvent corporations."

It is argued that the word "proceedings" refers only to the proceedings for the appointment of the receiver, and that it does not include the receivership proceedings in so far as any substantive rights or powers of the receiver are concerned. The proceedings referred to in the statute are evidently all of the steps to be taken in the cause. They must necessarily include all of the acts done by the court and the receiver in the cause which is to be instituted by the Attorney General. These acts are to be governed by the provisions of the general incorporation laws for the winding up of insolvent corporations, it is provided by the statute. If the acts of the court and the receiver are to be governed by the provisions of the general incorporation laws, then the receiver must take title to the property. Otherwise the acts ordered by the court and the acts performed by the receiver cannot be ordered or done in accordance with those provisions, but must be ordered or done in accordance with the principles governing ordinary chancery receiverships. The fact that the ordinary chancery receiver might accomplish, without taking title, practically all that the statutory receiver, with title, could accomplish makes no difference. The fact remains that if the Legislature intended, as we conclude it did, to have the acts

of the court and the receiver controlled by the said provisions, the receiver must have the title to the property. Section 957, Code 1915, descends into details and grants many powers not possessed by the ordinary receiver, some of which powers could not be exercised without the taking of the title to the property. The bank act does not purport to define the powers of the receiver except in general terms to the effect that he shall wind up the bank's affairs and liquidate its assets and distribute the proceeds. This grant of power falls far short of that granted by section 957, Code 1915. It follows that section 85, ch. 67, Laws 1915, must be held, in connection with section 959, Code 1915, to vest title in the bank receiver and vest the powers enumerated in section 957, Code 1915.

Proceeding upon the theory that the divestiture of title of an insolvent banking corporation takes place, under the statutes in question, upon appointment of a receiver, the question remains as to the effect thereof upon the priority of the state. It is strenuously argued that the state's priority is not lost even if title is divested by the appointment of a receiver. The argument is based upon the general doctrine that the state is not bound by the general words of a statute unless expressly mentioned. Just how the principle is applicable here, we fail to appreciate. If this were a case of the statute fixing the priority of creditors of an insolvent corporation, and the state were not mentioned, we could understand the application of the doctrine. But the statutes under consideration here have nothing whatever to do directly with priorities of creditors. They have to do with the proceedings for the winding up of insolvent banking corporations. They make no reference to priorities, leaving that to the general law. The fact that, incidentally and consequentially, the state loses its priority, by reason of the divestiture of the title, is not controlling. To say that the state loses its priority by the appointment of the receiver in an involuntary proceeding under the statute is to say no more than was said at common law to the effect that the priority was lost when the debtor's property was seized and sold under execution, or was assigned for the benefit of creditors. See Comr. v.

Bank, 161 Mich. 691, 125 N. W. 424, 127 N. W. 351; State v. Williams, 101 Md. 529, 61 Atl. 297, 1 L. R. A. (N. S.) 254, 109 Am. St. Rep. 579, 4 Ann. Cas. 970.

It follows that the decision we reached in the original opinion was correct, and that the motion for a rehearing should be denied; and it is so ordered.

HANNA, C. J., and ROBERTS, J., concur.

### SYLLABUS BY THE COUURT.

